UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HENRIETTA MINE, LLC,

        Plaintiff,

    v.

A.M. KING INDUSTRIES, INC.,

        Defendant.

No.  2:21-cv-00711-JAM-JDP

**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF DISMISSAL ON THE PLEADINGS**

    This dispute involves an agreement for the sale of mining equipment located at the Endako Mine in British Columbia between A.M. King Industries, Inc. ("King" or "Defendant") and Henrietta Mine, LLC ("Henrietta" or "Plaintiff").  See generally Compl., ECF No. 1-1.  Henrietta agreed to purchase the equipment from King for $500,000.  Id. ¶¶ 36, 39-41.  After Henrietta paid King, King informed Henrietta that Endako Mine would not allow Henrietta to remove the equipment unless it complied with some additional requirements.  Id. ¶ 45.  Henrietta declined and demanded King return the $500,000 for failing to deliver the equipment as agreed.  Id. ¶ 48.  King refused, and this lawsuit for breach of contract and unjust enrichment followed.  King now

1

moves for judgment on the pleadings.  Mot. for J. on the Pleadings ("Mot."), ECF No. 89.  For the reasons sets forth below, this motion is denied.[1]

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

In September 2019, Henrietta and King began communicating about Henrietta's purchase of mining equipment in British Columbia.  Compl. ¶ 20.  In November 2019, Henrietta sent King a formal offer to purchase the equipment for $500,000 plus the cost to recertify an overhead crane system at the premises, not to exceed $ 25,000.  Id. ¶ 36.  In December 2019, King emailed Henrietta an invoice for the equipment which listed the purchase price as $500,000 plus any and all costs and liability associated with certifying and use of the overhead crane.  Id. ¶ 41-42.  The invoice provided that $50,000 of the purchase price was due immediately and an additional $450,000 was due prior to the dismantling work.  Id. ¶ 42.  Pursuant to the terms of the invoice, Henrietta wired King $50,000 on December 9, 2019, and another $450,000 thereafter.  Id. ¶ 44.

In early January 2020, King informed Henrietta that it would not be permitted to disassemble or remove the equipment unless it complied with certain additional requirements not contained in the invoice or previously discussed by the parties.  Id. ¶ 45. While not specified in the Complaint, Henrietta in its opposition to the motion elaborates that the additional conditions included: (1) providing portable toilet facilities, potable water, and a

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for August 24, 2021.

lunch room; (2) providing generators, compressors, light plants, forklifts, cranes, and manlifts; (3) providing a designated First Aid Medic and ambulance for the duration of the project; (4) submitting a safety plan for review and approval prior to mobilization; (5) providing a certified electrical contractor to wire the generators and project lighting for the equipment removal; (6) providing snow removal as necessary; (7) complying with Endako Mine's on-site safety procedures; and (8) fabricating structural reinforcement such that all openings were covered or hard barriers placed after removal.  Opp'n at 12, ECF No. 92. Complying with the additional requirements would have cost Henrietta an additional $250,000.  Compl. ¶ 46.  Accordingly, Henrietta informed King it would not move forward with the purchase and demanded King return the $500,000 paid, to which King refused.  Id. ¶¶ 49, 51.  Henrietta then brought this action in Maricopa County Superior Court in Arizona for (1) declaratory relief; (2) breach of contract; and (3) unjust enrichment.  See generally Compl.  King removed the action to the District Court of Arizona on diversity grounds.  See Notice of Removal, ECF No. 1.  The District of Arizona court subsequently transferred the case to this Court, for a lack of personal jurisdiction over King.  Order Transferring Case, ECF No. 79.

King brought this motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing Henrietta failed to state a claim because by contracting to purchase the mills "as is, where is" it became responsible for all costs of disassembly and removal and could not rescind the contract based on such unexpected costs.  See generally, Mot.  Henrietta opposed the

1   motion, Opp'n, to which King replied.  Reply, ECF No. 93.

2                        II.   OPINION

3        A.   Legal Standard

4        Federal Rule of Civil Procedure 12(c) states that "[a]fter

5   the pleadings are closed — but early enough not to delay trial —

6   a party may move for judgment on the pleadings."  Fed. R. Civ.

7   P. 12(c).  A Rule 12(c) motion is reviewed under the same

8   standard as a Rule 12(b)(6) motion to dismiss.  Dworkin v.

9   Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).

10  The court takes as true the non-moving party's factual

11  allegations and draws all reasonable inferences in that party's

12  favor.  Hines v. Youseff, 914 F.3d 1218, 1227 (9th Cir. 2019).

13  Judgment under Rule 12(c) "is proper when the moving party

14  clearly establishes on the face of the pleadings that no

15  material issue of fact remains to be resolved and that it is

16  entitled to judgment as a matter of law."  Hal Roach Studios,

17  Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir.

18  1989).

19       B.   Analysis

20            1.   Choice of Law

21       In diversity cases, district courts normally apply the

22  substantive law of the forum state, including its choice of law

23  rules.  Klaxon Co. v. Sentor Elec. Mfg. Co., 313 U.S. 487, 496

24  (1941).  When a case is transferred from one district to another

25  to cure a lack of personal jurisdiction, the law of the

26  transferee district applies.  Muldoon v. Tropitone Furniture

27  Co., 1 F.3d 964, 967 (9th Cir. 1993).  Because this case was

28  transferred from Arizona to California due to a lack of personal

1   jurisdiction in Arizona, see Order, ECF No. 79, this Court must

2   apply California's choice of law rules.  See Nelson v. Int'l

3   Paint Co., 716 F.2d 640, 643-44 (9th Cir. 1983).

4        In the absence of an agreement on choice of law in a

5   contract, California applies California law to commercial

6   transactions so long as the transaction bears an appropriate

7   relation to the state.  Cal. Com. Code § 1301; Barclays Disc.

8   Bank Ltd. v. Levy, 743 F.2d 722, 725 (9th Cir. 1984).  Because

9   Defendant is a citizen of California, see Compl. ¶ 6, and the

10  contract was negotiated in part in California, see Order at 8-9,

11  ECF No. 79, the transaction bears an appropriate relation to the

12  state.  See Petersen v. Roylin Enters., Inc., 529 F.Supp. 584,

13  586 n.2 (D. Nev. 1982) (finding transaction bore an appropriate

14  relation to Nevada when defendants resided in Nevada and did

15  business there).  Thus, California law applies.[2]

16            2.   Subject Matter of the Contract

17       California has adopted the Uniform Commercial Code, see

18  Cal. Com. Code § 1101 et seq., under which Article 2 governs

19  transactions involving goods.  Id. § 2102.  This section defines

20  goods to mean "all things (including specially manufactured

21  goods) which are movable at the time of identification to the

22  contract for sale [. . .]" Id. § 2105.

23       The parties dispute whether the contract at issue is for

24  the sale of goods and thus governed by the section 2 of the

25  Commercial Code.  See Opp'n at 4-6; Reply at 2-3.  King, relying

26  on California Commercial Code § 2107(1), argues that the

27  _____

28  [2] Accordingly, the Court denies as moot King's request to take
    judicial notice of a British Columbia case.  See Mot. at 12.

contract for the mining equipment constitutes a sale of real property.  Reply at 3.  That section states that "[a] contract for the sale of minerals or the like (including oil and gas) or a structure of its materials to be removed from realty is a contract for the sale of goods within this division if they are to be severed by the seller [. . .]".  King argues that because by the terms of the contract, Henrietta, the purchaser, was responsible for removing the equipment and not the seller, the sale does not constitute a sale of goods under this definition.

King, however, ignores § 2107(2) which goes on to state that "[a] contract for the sale apart from the land of growing crops or other things attached to realty and capable of severance without material harm thereto [. . .] is a contract for the sale of goods within this division whether the subject matter is to be severed by the buyer or by the seller even though it forms part of the realty at the time of contracting [. . .]" (emphasis added).  From the pleadings, it cannot be determined with certainty whether the equipment could be removed without materially harming the land.  Viewed in the light most favorable to Henrietta, the equipment could fit into this definition, making section 2 of the Commercial Code applicable.

King also relies on California Public Resource Code § 3980 to support its argument that the contract was one for real property.  Reply at 3.  This argument is without merit.  That section states that "mills, and all other machinery or tools used in working or developing a mine, are deemed affixed to the mine."  Cal. Pub. Res. Code § 3980.  However, this is a rebuttable presumption that the parties may contract around.

See Teater v. Good Hope Dev. Corp., 14 Cal.2d 196, 207 (1939)
("the parties themselves may, in their dealings with chattels
annexed to or used in connection with real estate, fix upon them
whatever character, as realty or as personalty, they desire and
the courts will give to the property the character which the
parties themselves have fixed upon"); Fry v. Lost Key Mines, 108
Cal.App.2d 568, 571-574 (Ct. App. 1952); see also Nead v.
Specimen Hill Mining Co., 52 Cal.App.2d 475, 481 (1942).  Here,
the parties clearly meant to contract for the equipment itself
as personal property not for the land, as the contract specifies
it is for the sale of the equipment and specifically
contemplates it being removed off the property.  See Ex. 1 to
Compl. (listing equipment included in sale and stating "[b]uyer
is responsible for safely dealing with any and all chemicals
related to the removal of the purchased equipment.")
Accordingly, viewed in the light most favorable to Henrietta,
the non-moving party, it is plausible that the contract is
governed by section 2 of the Commercial Code.

3.   Breach of Contract Claim

King argues that Henrietta's breach of contract claim must
fail because it agreed to purchase the equipment "as is, where
is."  Mot. at 10-14.  King argues that this clause made
Henrietta responsible for any additional requirements to remove
the equipment off the property.  Id.  The Court disagrees.  Such
an "as is" clause "calls the buyer's attention to the exclusion
of the warranties and makes plain that there is no implied
warranty", Cal. Com. Code § 2316(3)(a), which "in ordinary
commercial usage [is] understood to mean that the buyer takes

7

1    the entire risk as to the <u>quality</u> of the goods involved."

2    U.C.C. § 2-316 cmt. 7 (emphasis added).  The contract, in fact,

3    later confirms this interpretation stating that: "[a]ll property

4    in 'as is condition' [. . .] do[es] not warrant that the goods

5    are merchantable or fit for any purpose."  Ex. 1 to Compl.

6    Thus, the "as is" provision meant Henrietta bore the risk in

7    regards to the quality and operation of the equipment.  It does

8    not support King's argument that Henrietta risked being subject

9    to additional requirements for its removal.  Nor does the "where

10   is" provision, which refers to the place of delivery.  <u>See</u>

11   <u>Herrmann v. Fireman's Fund Ins. Co.</u>, 127 Cal.App.2d 560, 571

12   (Ct. App. 1954).

13        That the contract specifically listed three matters

14   Henrietta was responsible for in connection with the disassembly

15   and removal of the mining equipment further supports its

16   position that it could not be subject to additional requirements

17   pertaining to the equipment removal.  <u>See</u> Ex. 1 to Compl.

18   (stating buyer was to be responsible for (1) properly handling

19   and disposing of any cyanide residue associated with any of said

20   purchased mills; (2) safely dealing with any and all chemicals

21   related to the removal of the purchased equipment; and (3) for

22   any and all costs and liability associated with certifying and

23   use of the overhead crane); <u>see also</u> <u>Murphy v. DirectTV, Inc.</u>,

24   724 F.3d 1218, 1234 (9th Cir. 2013) ("mention of one matter

25   implies the exclusions of all others").  Accordingly, King has

26   failed to demonstrate Henrietta's claims fail as a matter of law

27   and its motion for judgment on the pleadings is denied.  <u>See</u>

28   <u>Gold Mining & Water Co. v. Swinerton</u>, 23 Cal.2d 19, 28 (1943)

1   (finding a refusal to perform unless the other party agrees to

2   an additional condition is a repudiation).

3           4.   Leave to Amend

4       Henrietta in opposition also relies on a new theory to

5   support its breach of contract claim — that King did not

6   actually own the mine at the time Henrietta paid the purchase

7   price.  Opp'n at 9—11.  Because this theory was not pled in the

8   operative complaint, the Court does not address it.  See

9   Provencio v. Vazquez, 258 F.R.D. 626, 639 (E.D. Cal. July 29,

10  2009) (finding Plaintiffs could not raise additional theories of

11  liability in an opposition to a motion to dismiss and instead

12  had to file a motion for leave to amend if they wanted to pursue

13  those claims).  Plaintiff requests leave to amend in its

14  opposition.  See Opp'n at 14 n.7.  The Court denies this request

15  without prejudice as Defendant has not been given a proper

16  chance to respond.  If Plaintiff seeks to amend its complaint,

17  it must file a separate motion to amend.

18                  III.   ORDER

19      For the reasons set forth above, the Court DENIES

20  Defendant's Motion for Judgment on the Pleadings.

21      IT IS SO ORDERED.

22  Dated: October 21, 2021

23

24                                        JOHN A. MENDEZ,
                                        UNITED STATES DISTRICT JUDGE

25

26

27

28