FENNEMORE DOWLING AARON
G. Andrew Slater (CA Bar No. 238126)
8080 N. Palm Avenue, Third Floor
Fresno, California 93711
Telephone: (559) 432-4500
Email: aslater@fennemorelaw.com

FENNEMORE CRAIG, P.C.
Douglas C. Northup (AZ Bar No. 013987)
Brett C. Gilmore (AZ Bar No. 034598)
2394 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
Telephone: (602) 916-5000
Email: dnorthup@fennemorelaw.com
Email: bgilmore@fennemorelaw.com

*Attorneys for Plaintiff*
*Henrietta Mine, LLC*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| Henrietta Mine, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>A. M. King Industries, Inc., a Nevada corporation,<br><br>Defendant. | Case No. 2:21-cv-00711-JAM-JDP<br><br>**FIRST AMENDED COMPLAINT**<br><br>(Declaratory Relief, Breach of Contract, and Unjust Enrichment) |

Plaintiff Henrietta Mine, LLC ("Henrietta") hereby alleges as follows:

**THE PARTIES**

1. Henrietta is a duly formed Arizona limited liability company doing business in the State of Arizona, with its principal place of business in Maricopa County, Arizona.

2. Triton Development, LLC, an Arizona limited liability company, is the

managing member of Henrietta.

3. Lock/Ryder, LLC, a Texas limited liability company, is a member of Henrietta.

4. M&K Family Partners, LTD, a Texas limited partnership, is a member of Henrietta.

5. Dobson Law Bldg, LLC, a Texas limited liability company, is a member of Henrietta.

6. A. M. King Industries, Inc. ("A.M. King" or "King") is a Nevada corporation, with its principal place of business located in Butte County, California.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over King, and it has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

8. Henrietta's claims arise from activities and conduct that A.M. King purposefully directed toward Arizona, and contractual obligations A.M. King incurred in Arizona and California.

9. A.M. King holds itself out as a global leader in the mining equipment industry with wide-ranging contacts, including in Arizona.

10. A.M. King markets itself online as owning "one of the largest inventories of large & small ball mills, SAG mills and ancillary mining & processing equipment in the world," which is "stored in strategic locations around the globe."

11. A.M. King's website lists various "A.M. King Storage Locations World Wide," including a storage yard in Tucson, Arizona.

12. A.M. King also markets itself online as being "in a position to locate equipment, removing and transporting to and from nearly anywhere in the world," and claims to have "professional relationships worldwide with independent engineers, inspectors, manifesting crews, shipping organizations, and customs advocates to support

the safe transport of equipment to the project site."

13.   A.M. King maintains contacts with Arizona as part of A.M. King's worldwide business activities.

14.   A.M. King was registered to do business in Arizona from 1996 to 2014, and its online list of representative projects identifies multiple Arizona projects.

15.   Included in a list of "Mile Stone Projects" on A.M. King's website is a ball mill disassembly and removal project for the Black Mesa mine in Kayenta, Arizona.

16.   A.M. King's purposeful contacts with Arizona include its business dealings with Henrietta, which began on or about September 5, 2019.

17.   Between September 2019 and April 2020, A.M. King personnel sent emails and placed calls to Henrietta personnel, who were located in Arizona at all material times, regarding Henrietta's purchase of mining equipment for a mining operation in Yavapai County.

18.   In a September 13, 2019 email to Troy Spencer and others, Marty Sears, manager and controller of A.M. King, stated that A.M. King "is ready to assist in any capacity [it] can on the ball mill for Troy Spencer and the Henrietta Mine in Prescott AZ."

19.   After identifying a potentially suitable ball mill, rod mill, and regrind mill for Henrietta in British Columbia (the "BC Mills"), A.M. King communicated and negotiated with Henrietta personnel in Arizona regarding Henrietta's purchase, disassembly, and removal of the same.

20.   A.M. King made arrangements so that Henrietta personnel could travel from Arizona to Canada to inspect the BC Mills, and it sent documentation for the BC Mills to Henrietta personnel in Arizona, including installation instructions, plans, and specifications.

21.   On December 9, 2019, Scott Pfeiffer of A.M. King sent an "invoice" relating to the BC Mills to Troy Spencer and Lane Spencer of Henrietta.

22.   The invoice is addressed to "Henrietta Mine" in "Chandler, Arizona 85286."

23. As set forth below, the invoice is a contract that A.M. King drafted relating to the purchase of the BC Mills.

24. A.M. King personnel continued to send emails and place calls to Henrietta personnel located in Arizona through April 2020, including an email soliciting interest in a modular office trailer for sale in Nevada.

25. After learning that Henrietta was considering a High Pressure Grinding Roller ("HPGR"), A.M. King began soliciting Henrietta's purchase of an HPGR unit, including one located in Australia.

26. A.M. King also tried to convince Henrietta to purchase mills located in Page, Arizona (the "Page Mills"), but Henrietta informed A.M. King it was not interested in the Page Mills.

27. A.M. King continued to solicit Henrietta's purchase of the Page Mills nonetheless, and A.M. King personnel travelled to Arizona and urged Henrietta to join them for an inspection of the Page Mills.

28. At all material times, A.M. King was aware that Henrietta is based in Arizona and planned to transport the BC Mills to Arizona for use at its mining operation in Yavapai County, and it purposely directed its conduct toward Henrietta to derive a commercial benefit from Arizona.

29. Indeed, in an April 9, 2020 email to Troy Spencer, Scott Pfeiffer of A.M. King stated that "[m]ines like Henrietta are the bread and butter for A.M. King."

**GENERAL ALLEGATIONS**

30. Henrietta repeats and realleges each and every preceding allegation as if fully set forth herein.

31. Beginning in or about September 2019, A.M. King and Henrietta discussed the purchase, removal, and transport of the BC Mills to the Henrietta Mine in Mayer, Arizona.

32. During negotiations relating to the BC Mills, A.M. King informed Henrietta that it was communicating with the owner of Endako Mines ("Endako"), which is where the BC Mills are located.

33. During negotiations, A.M. King indicated that it would "firm up arrangements on [its] end" to facilitate the disassembly and removal of the BC Mills "before the end of the year."

34. On November 12, 2019, Troy Spencer of Henrietta emailed Alastair Roughton of A.M. King regarding a formal offer to purchase the BC Mills for a total price of $500,000, plus the cost to recertify an overhead crane system at the premises in which the BC Mills are located "not to exceed $25,000 US Dollars."

35. The next day, Mr. Roughton thanked Henrietta for its offer but stated that A.M. King "need[ed] to get clarification on any other components that should be specified at this time."

36. On December 26, 2019, A.M. King agreed to convey certain feedback from Mr. Taylor to Endako, including that Henrietta was willing to budget "a reasonable amount" for certain expenses relating to disassembly and removal of the BC Mills.

37. A.M. King and, upon information and belief, Endako understood that Henrietta's offer was to purchase the BC Mills for $500,000 plus a maximum of $25,000 in recertification costs pertaining to the overhead crane system, and that Henrietta or its agents would conduct the disassembly and removal of the BC Mills.

38. One such agent is Prime Field Service ("Prime"), whom Henrietta hired to oversee disassembly and removal of the BC Mills, and with whom A.M. King communicated by phone and email throughout negotiations pertaining to the BC Mills.

39. On December 9, 2019, Scott Pfeiffer of A.M. King emailed Troy Spencer and Lane Spencer invoice No. 120119 (the "Invoice") "to get things moving forward." A true and correct copy of the Invoice is attached as **Exhibit 1**.

40. Among other things, the Invoice sets forth a purchase price for the BC Mills of $500,000 plus "any and all costs and liability associated with certifying and use of the overhead crane" (the "Purchase Price"). The Invoice provides that $50,000 of the Purchase Price is due "immediately," and an additional $450,000 is due "prior to dismantling work."

41. The Invoice also includes "wire transfer instructions" for Henrietta to wire amounts due under the Invoice to A.M. King, and it states that "title to and right of possession of the [BC Mills] is retained by seller until payment in full is received."

42. Pursuant to the terms of the Invoice, Henrietta wired A.M. King $50,000 on December 9, 2019, and another $450,000 thereafter.

43. King received payment in full of the Purchase Price from Henrietta on or about December 10, 2019.

44. As learned through discovery in this case, King never had title to or possession of the BC Mills, including when it received payment in full of the Purchase Price from Henrietta.

45. King never could or did convey good and rightful title to BC Mills to Henrietta.

46. In early January 2020, A.M. King informed Dave Taylor of Prime that Endako would not allow Henrietta to disassemble and remove the BC Mills unless it complied with certain previously undisclosed requirements that were not contained in the Invoice or contemplated by the parties (the "Additional Requirements").

47. The Additional Requirements would cause Henrietta to incur $250,000 or more in additional expenses relating to the disassembly and removal of the BC Mills.

48. Henrietta did not agree to the Additional Requirements—they are not included in the Invoice, they were unforeseeable to Henrietta, and they were not contemplated by the parties.

49. A.M. King's tender of delivery of the BC Mills to Henrietta failed to conform

to the Invoice because it was conditioned upon Henrietta's compliance with the Additional Requirements.

50. Due to the Additional Requirements, Henrietta informed A.M. King that it would not move forward with the purchase of the BC Mills.

51. Henrietta ultimately was forced to purchase substitute equipment as a result of A.M. King's failure to tender delivery of the BC Mills in conformance with the Invoice.

52. On April 6, 2020, Henrietta demanded that A.M. King return the $500,000 Henrietta wired to it, but A.M. King refused to do so.

## COUNT ONE
## DECLARATORY RELIEF

53. Henrietta repeats and realleges each and every preceding allegation as if fully set forth herein.

54. Pursuant to 28 U.S.C. § 2201(a), A.R.S. §§ 12-1831 to -1846, and Cal. Code of Civ. Proc. § 1060, Henrietta seeks a declaration of its rights, status, and legal relations under the Invoice.

55. Specifically, Henrietta seeks a declaratory judgment that:

   a. the Invoice is a binding and enforceable contract between Henrietta and A.M. King;

   b. Henrietta rendered payment in full of the Purchase Price to A.M. King;

   c. A.M. King was contractually obligated to deliver title to and right of possession of the BC Mills to Henrietta upon receipt of payment in full of the Purchase Price;

   d. King failed to tender delivery of the BC Mills to Henrietta as the Invoice requires because King did not have and never had title to or possession of the BC Mills at any point, including when it received payment in full of the Purchase Price;

  e. the Additional Requirements were not included in the Invoice, were unforeseeable to Henrietta, and were not contemplated by the parties;

  f. Even if King tendered delivery of the BC Mills to Henrietta, A.M. King's tender failed to conform to the Invoice because it was conditioned upon Henrietta's compliance with the Additional Requirements;

  g. Henrietta was entitled to, and did, reject the BC Mills and cancel the Invoice due to A.M. King's failure to tender delivery of the BC Mills in conformance with the Invoice;

  h. pursuant to A.R.S. §§ 12-341, 12-341.01, and 47-2711, Cal. Civ. Code § 1717, Cal. Code of Civ. Proc. § 1033, and Cal. Comm. Code §§ 2711, Henrietta is entitled to (i) recover the $500,000 it wired to A.M. King in connection with the Invoice; (ii) recover its attorneys' fees and costs; and (iii) recover any and all additional damages, in amounts to be proven at trial, resulting from A.M. King's failure to tender delivery of the BC Mills in conformance with the Invoice.

56. Henrietta is entitled to declaratory judgment because it has an interest in the Invoice, which is a written contract or other writings constituting a contract.

57. Henrietta is also entitled to declaratory judgment because its rights, status, or other legal relations are affected by Chapter 2 of the Uniform Commercial Code, A.R.S. §§ 47-2101 to -2725 and Cal. Comm. Code §§ 2101 to -2725.

**COUNT TWO**
**BREACH OF CONTRACT**

58. Henrietta repeats and realleges each and every preceding allegation as if fully set forth herein.

59. The Invoice is supported by adequate consideration and constitutes a valid, legally enforceable contract between Henrietta and A.M. King.

60. As memorialized by the Invoice and required by A.R.S. § 47-2312(A) and

Cal. Comm. Code § 2312(1), A.M. King was contractually and legally obligated to provide title to and right of possession of the BC Mills to Henrietta upon King's receipt of payment in full of the Purchase Price.

61. Henrietta accepted A.M. King's offer and paid the Purchase Price by wiring $500,000 to A.M. King on or about December 10, 2019.

62. King did not have and never had title to or possession of the BC Mills at any point, including when King received the full Purchase Price from Henrietta on or about December 10, 2019.

63. King breached the warranty of title by failing to convey good title and make a rightful transfer of the same to Henrietta despite having received payment in full of the Purchase Price from Henrietta.

64. A.M. King was also legally and contractually obligated to tender delivery of the BC Mills to Henrietta upon receipt of payment in full of the Purchase Price.

65. A.M. King's tender of delivery of the BC Mills to Henrietta failed to conform to the Invoice because it was conditioned upon Henrietta's compliance with the Additional Requirements, which is a default and breach of the Invoice.

66. Within a reasonable time after learning of the Additional Requirements, Henrietta seasonably notified A.M. King that it was rightfully rejecting the BC Mills.

67. Pursuant to A.R.S. §§ 47-2601 and 47-2711 and Cal. Comm. Code §§ 2601 and 2711, Henrietta was entitled to, and did, reject the BC Mills and cancel the Invoice due to A.M. King's failure to tender delivery of the BC Mills in conformance with the Invoice.

68. A.M. King's default and breach of the Invoice has damaged and will continue to damage Henrietta in an amount to be proven at trial.

69. A.M. King's failure to return the $500,000 it received from Henrietta in connection with the Invoice has damaged Henrietta and impaired its ability to conduct business.

70. Pursuant to A.R.S. §§ 47-2711, -2713, and -2715, and Cal. Comm. Code §§ 2711, 2713, and 2715, Henrietta is entitled to recover from A.M. King:

    a. any and all amounts paid to A.M. King in connection with the Invoice;

    b. any and all incidental and consequential damages resulting from A.M. King's breaches of the Invoice; and

    c. any and all additional damages, in amounts to be proven at trial, resulting from A.M. King's failure to convey title to and tender delivery of the BC Mills in conformance with the Invoice.

71. Henrietta is also entitled to recover its attorneys' fees and costs pursuant to A.R.S. § 12-341 and -341.01.

## COUNT THREE
## UNJUST ENRICHMENT

72. Henrietta repeats and realleges each and every preceding allegation as if fully set forth herein.

73. In the alternative, and to the extent it is determined that no valid or enforceable contract exists between Henrietta and A.M. King, whether because there was no meeting of the minds between Henrietta and A.M. King regarding a material term or because of some other defect in formation or bar to enforcement, A.M. King is not entitled to keep the $500,000 Henrietta wired to it.

74. A.M. King provided no benefit in exchange for the funds it received from Henrietta and, as such, it has been unjustly enriched at Henrietta's expense.

75. To allow A.M. King to retain the funds it received from Henrietta would be inequitable and would allow A.M. King to profit from its wrongdoing.

76. A.M. King should be required to disgorge any and all funds received from Henrietta, in addition to any and all other amounts necessary to compensate Henrietta.

## PRAYER FOR RELIEF

1   WHEREFORE, Plaintiff Henrietta Mine, LLC demands judgment against Defendant
2   A. M. King Industries, Inc. as follows:

3   (a)   For compensatory damages, in amounts to be determined at trial, that
4   Henrietta has suffered and will continue to suffer as a result of A.M. King's breach of the
5   Invoice and other unlawful activities, including but not limited to:

6   (i)   any and all amounts paid to A.M. King in connection with the Invoice
7   pursuant to A.R.S. § 47-2711 and Cal. Comm. Code § 2711; and

8   (ii)   incidental and consequential damages pursuant to A.R.S. §§ 47-2713
9   and -2715 and Cal. Comm. Code §§ 2713 and 2715;

10   (b)   For disgorgement, in an amount to be determined at trial, of A.M. King in an
11   amount sufficient to compensate Henrietta for any and every unjust enrichment A.M. King
12   received at Henrietta's expense;

13   (c)   For restitution, in an amount to be determined at trial, for the value of any
14   unjust enrichment A.M. King received at Henrietta's expense;

15   (d)   For pre- and post-judgment interest under A.R.S. § 44-1201 and Cal. Civ.
16   Code § 3287, and Cal. Code Civ. Proc. § 685.010;

17   (e)   For Henrietta's costs and attorneys' fees in bringing this action pursuant to
18   A.R.S. §§ 12-341 and 12-341.01, Cal. Civ. Code § 1717, Cal. Code of Civ. Proc. § 1033,
19   and any other available source; and

20   / / / /
21   / / / /
22   / / / /
23   / / / /
24   / / / /
25   / / / /
26   / / / /

ase 2:21-cv-00711-JAM-JDP     Document 101     Filed 03/31/22     Page 12 of 15

(f)     For any other legal or equitable relief that the Court deems appropriate.

DATED this 31st day of March, 2022.

                              FENNEMORE CRAIG, P.C.

By: */s/ Douglas C. Northup*
    Douglas C. Northup
    Brett C. Gilmore
    *Attorneys for Plaintiff*
    *Henrietta Mine, LLC*

                              FENNEMORE DOWLING AARON

By: */s/ G. Andrew Slater*
    G. Andrew Slater
    *Attorneys for Plaintiff*
    *Henrietta Mine, LLC*

19527864


- 12 -

# EXHIBIT 1



**A.M. KING INDUSTRIES, INC**

2875 Feather River Blvd Oroville, CA USA

**Tel** 530-534-7965  **Fax** 530-534-6013

admin@amking.com  |  www.amking.com

## INVOICE 120119                                                                                              12.6.2019

| BILL TO | SHIP TO | TERMS |
|---|---|---|
| Henrietta Mine<br>Troy Spencer<br>3417 S. Valerie Dr.<br>Chandler, Arizona 85286<br>(480) 434-3696<br>troy@tritondevelop.com | | 10% Deposit Payment Due Immediately **–$50,000**<br>90% Payment **- $450,000** Due Prior to Dismantling Work |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 1 Ea. | Purchase of One (1) only, Lot of equipment:<br><br>- Ball Mill #1 and associated components<br>- Rod Mill #1 and associated components<br>- Regrind Mill #2 and associated components<br>- All spare components for Ball/Rod mills - as per attached list<br>- One spare electric motor (ie: spare rotor & stator that are already crated for shipping)<br>- Grind media (balls) from said mills<br>- One (1) Cyclone Cluster Assembly<br>- Two (2) Cyclone O/F Transfer Pumps<br>- One (1) Spare Cyclone Feed Pump<br>- MCC/Starters related to said purchased mills<br>- Feed Tubes for said purchased mills<br>- Buyer to be responsible for properly handling and disposing of any cyanide residue associated with any of said purchased mills.  Buyer is responsible for any safely dealing with any and all chemicals related to the removal of the purchased equipment.<br>- Structures - any structures that are directly related to said purchased mills are included.<br>- Buyer is responsible for any and all costs and liability associated with certifying and use of the overhead crane.<br>- Sale is: 'as is;  where is'  Endako Mine Site, Fraser Lake, BC, Canada<br>- Payment in full required prior to mobilization to site | $500,000.00 | $500,000.00 |

DS
TS

HM000440



| | |
|---|---:|
| **BALANCE DUE** | $500,000.00 |
| **SALES TAX** | $0.00 |
| **TOTAL DUE IMMEDIATLEY** | $50,000.00 |

**WIRE TRANSFER INSTRUCTIONS**

A.M. King Industries, Inc.

2875 Feather River Blvd., Oroville, CA. 95965

Account #191148071

Tri Counties Bank

Address: 63 Constitution Drive

Chico, CA 95973

Beneficiary Swift Code:  TRICUS66

ABA Routing #121135045

ALL PROPERTY SOLD IN "AS IS CONDITION."  SUCH WARRANTY IS EXPRESSLY IN LIEU OF ANY AND ALL WARRANTIES.  THE SELLERS DO NOT WARRANT THAT THE GOODS ARE MERCHANTABLE OR FIT FOR ANY PURPOSE.

TERMS:  TITLE TO AND RIGHT OF POSSESSION OF THE MERCHANDISE ABOVE DESCRIBED IS RETAINED BY SELLER UNTIL PAYMENT IN FULL IS RECEIVED.  1 1/2% PER MONTH SERVICE CHARGE WHICH IS AN ANNUAL RATE OF 18% MADE ON INVOICES NOT PAID IN ACCORDANCE WITH TERMS.  THE UNDERSIGNED BUYER AGREES TO PAY COLLECTION COSTS AND REASONABLE ATTORNEY'S FEES IF SUIT IS BROUGHT TO ENFORCE PAYMENT OF PURCHASE PRICE

SIGNATURE _____

*DocuSigned by: Troy Spencer — 1B2006ED9F4240A...*

Managing Member for Henrietta Mine, LLC

Page 2

HM000441